IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | HON. JEROME B. SIMANDLE |
| v. | Criminal No. 05-787 (JBS) |
| BISHOP KRABSZ, | **OPINION** |
| Defendant. | |

APPEARANCES:

Christopher J. Christie
United States Attorney
By:  Jacqueline M. Carle
     Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street, 4th Floor
Camden, New Jersey 08101
     Attorney for the United States of America

Carl D. Poplar, Esq.
CARL D. POPLAR, P.A., A PROFESSIONAL CORPORATION
1010 Kings Highway South
Building Two – Suite A
Cherry Hill, New Jersey 08034
     Attorney for Defendant Bishop Krabsz

**SIMANDLE**, District Judge:

On October 6, 2005, federal agents searched Defendant's private residence pursuant to a warrant issued the day before by Judge Joel B. Rosen, U.S. Magistrate Judge.  The search uncovered, among other things, a gun which was seized.  On November 2, 2005, a federal grand jury sitting in Camden returned a one-count Indictment against Bishop Krabsz, a convicted felon, charging him with knowingly possessing in and affecting commerce a firearm in violation of 18 U.S.C. § 922(g)(1) and 2.

Defendant has moved to suppress the items seized from his residence.  Defendant does not challenge the existence of probable cause to support the issuance of the warrant.  (Def. Br. at 18.)  Instead, Defendant seeks suppression (1) on the ground that the warrant is an unconstitutional general warrant, and (2) because there was no probable cause to find the items to be seized at his residence.  For the following reasons, the Court rejects Defendant's Fourth Amendment challenges.  The motion to suppress will be denied and the Government will be permitted to introduce at trial evidence seized pursuant to the warrant.

## I.   FACTUAL BACKGROUND

This case began as an investigation by the Internal Revenue Service ("IRS") into Defendant Bishop Krabsz and his business partner, Kevin Rankin.  Based on information uncovered during the investigation, IRS Special Agent Laura A. Capra prepared a lengthy affidavit in support of search warrants for the following properties: (1) Defendant's private residence in Cherry Hill, New Jersey; (2) Kevin Rankin's private residence in Philadelphia, Pennsylvania; (3) Dangerous Curves, an adult entertainment club located in Philadelphia, Pennsylvania; and (4) a restaurant/bar named the Ashburner Inn located in Philadelphia, Pennsylvania.

### A.   Search Warrant

The affidavit in support of the search warrant application states that Agent Capra had:

> probable cause to believe that Kevin Rankin and Bishop
> Krabsz – the owners and operators of an adult
> entertainment club in Philadelphia known as Dangerous
> Curves and two of the investors in a restaurant/bar in
> Philadelphia known as the Ashburner Inn – conspired to
> defraud the United States, filed materially false
> personal tax returns for tax years 2001, 2002, 2003
> and/or 2004, willfully evaded and failed to account
> for, withhold, and pay federal payroll taxes for at
> least some of the employees of Dangerous Curves,
> structured cash transactions to evade reporting
> requirements, and/or willfully failed to file certain
> returns . . . .

The affidavit recites that while Defendant reported total income

of less than $50,000 for each of the specified years, he reported

a total income of more than $200,000 for one of those years in

connection with a bank loan application.[1]

Attachment B-2 authorized the search for the following items

at Defendant's private residence:

> For the period of January 1, 2000 through the present,
> the following records, documents, materials and/or
> files, whether in paper form or in the form of
> computerized electronic data, in the name of, or on
> behalf of: Kevin Rankin, Bishop Krabsz, Dangerous
> Curves, Ashburner Inn and the business entities which
> are used to manage, operate, and hold property for
> Dangerous Curves and Ashburner Inn, and any other
> entity in which Kevin Rankin and or Bishop Krabsz have
> a financial interest.
>
> 1.   All financial records, including bank statements,
>      canceled checks, checkbooks, passbooks, journals,
>      ledgers, checks, drafts, letters of credit,
>      certificates of deposit, wire transfer documents,
>      money orders, withdrawal tickets, deposit slips,
>      money cash bands, records of mutual funds, stocks,

---

[1] Once again, Defendant does not challenge the existence of
probable cause to support the issuance of the warrant.

bonds, records of real estate transactions, invoices, bills, loan documents, business and financially related correspondence and notes, certificates of insurance, lists of assets, records of safe deposit boxes, and all other items evidencing the obtaining, controlling, transfer, and/or concealment of assets and the obtaining, controlling, transfer, and/or concealment of assets and the obtaining, controlling, transfer, concealment and/or expenditure of money.

2.   All checks paid to employees for wages, including the employer's copy of the check stub, Forms W-2, and Forms 1099.

3.   All records of cash payments to entities and individuals.

4.   All records of money and any other assets sent abroad.

5.   Address and/or telephone books, rolodex indices, business cards, and any papers reflecting names, addresses, telephone numbers, pager numbers, facsimile numbers, electronic mail addresses, and/or telex numbers of business associates, sources of supply, customers, employees, temporary worker, drivers used to transport workers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

6.   All tax records, including but not limited to, tax returns, IRS forms, tax forms of equivalent state and local agencies, and correspondence with the IRS or equivalent state and local agencies.

7.   All employee background records including applications for employment and personnel files.

8.   All corporate and/or business bookkeeping records and other financial records including trial balances, general ledgers, general journals, subsidiary ledgers and journals, disbursement records and/or journals, accounts payable ledgers and records, payroll records, loan receivable and payable ledgers, and cash disbursement journals.

4

9.    All corporate minute books, Stock Registers or other records reflecting ownership of corporate stock.

10.   All financial statements, bookkeeper's work papers and/or accountant's work papers used in the preparation of corporate and/or business records and tax returns.

11.   Electronic equipment, such as computers and fax machines, and relating manuals used to generate, transfer, count, record, and/or store the information described in items 1 through 10 of this attachment.[2]

(Def. Ex. 2.)

The affidavit additionally states that probable cause existed to find the items to be seized at Defendant's private residence: first, on the five separate occasions in September, 2005 that FBI agents conducted surveillance of Defendant's home, Defendant was seen leaving his residence with a briefcase; second, real estate records stated that Defendant is the sole owner of the residence and that electric and water at that location are in his name; third, a review of the mail delivered to the residence on September 27, 2005 revealed that "personal and monthly expense type bills" are mailed to Defendant at his residence; and finally, records from Comcast Corp. show that Defendant has residential high speed internet service at his house.

---

[2] With respect to computer records, subsections (a) - (c) further refine the category of items to be seized.

B.     Search of Defendant's Residence

_____The warrant application relating to the Defendant's residence in New Jersey was submitted to the Honorable Joel B. Rosen, U.S. Magistrate Judge, who reviewed and signed the warrant on October 5, 2005.[3]  The very next day, at approximately 10:30 a.m., between 13-15 agents executed the search of Defendant's house.  Although Defendant was not present at the time, his fiancé, Lisa Bonnett, was present.  According to her affidavit, the search covered Defendant's bedroom, including dresser drawers; the outside shed, including plastic bins containing grass seed; the bedroom of Ms. Bonnett's 11 year-old son; the area behind a light fixture on a dresser in the bedroom; and the drawers and closets in a room set aside for Ms. Bonett's brother. (Bonnet Aff. ¶ 7.)

During the search, a firearm was seized from a shoe box on the top shelf of a clothes closet.  On November 2, 2005, a federal grand jury sitting in Camden returned a one-count Indictment against Defendant under 18 U.S.C. § 922(g)(1) and 2. Defendant subsequently filed the instant suppression motion, and this Court heard oral argument on April 10, 2006.

---

[3] Because three of the four search locations identified in the warrant application are in Pennsylvania, the Government first submitted the search warrant application to a magistrate judge in the Eastern District of Pennsylvania.  That warrant was signed on October 3, 2005.

## II.  DISCUSSION

The Court begins its discussion with the relevant constitutional text.  The Fourth Amendment to the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  "To be constitutionally sound, search warrants must state probable cause and 'particularly describe the place to be searched, and the persons or things to be seized.'" Bartholomew v. Commonwealth of Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000) (quoting U.S. Const. amend. IV).

### A.    The Warrant is Not General

Defendant argues first that the warrant authorizing the search of his house was an impermissible general warrant because it failed to particularize the place to be searched or the things to be seized.  Therefore, Defendant maintains, the evidence seized pursuant to the warrant must be suppressed.  For reasons now explained, the Court holds that the warrant was not a general warrant.

A general warrant is a warrant that authorizes "a general exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).  The particularity

7

requirement of the Fourth Amendment "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  Marron v. United States, 275 U.S. 192, 196 (1927).  "It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed."  United States v. Christine, 687 F.2d 749, 758 (3d Cir. 1982).

In Christine, 687 F.2d at 749, an investigation of allegations of fraud conducted by the Inspector General's Office of the Department of Housing and Urban Development ("HUD") revealed information about a scheme in which the defendants, owners of a company, allegedly fraudulently procured HUD Title I Home Improvement Loans for uncreditworthy individuals.  The magistrate issued a warrant authorizing any postal inspector to search the defendants' office and to seize the following property:

> (a) all folders and all documents contained therein and all other documents relating to home improvements and home improvement contracts pursuant to the HUD Title I Insured Home Improvement Loan program;
>
> (b) all checks, check stubs and bank statements, deposit slips and withdrawal slips, reflecting the receipt and disbursement of funds through Landmark Builders, Inc. for the period January 1, 1977 to the present;
>
> (c) all general ledgers, general journals, cash receipt disbursement ledgers and journals for the period January 1, 1977 to the present;

(d) all correspondence to and from and submissions to Collective Federal Savings and Loan; and

(e) all other documents, papers, instrumentalities and fruits of the crime of submission of false statements in connection with the HUD Title I Insured Home Improvement Loan program as well as any evidence of a scheme to defraud HUD or Collective Federal Savings and Loan or any other creditor by use of the United States mails.

Id. at 751.  In holding that the warrant was not a general warrant, the Court of Appeals explained:

The warrant at issue cannot be invalidated as a general warrant for it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence.  Rather, the warrant's clauses describe in both specific and inclusive generic terms what is to be seized: "all folders . . . all checks . . . all general ledgers [and] all correspondence. . . ."  By directing the searching officers to seize all of these items, the magistrate, rather than the officer, determined what was to be seized.  Neither is the final clause of the warrant ("all other documents, papers, instrumentalities and fruits of the crime") in the nature of a general warrant.

Id. at 753 (citing Andresen v. Maryland, 427 U.S. 463, 470-77 (1976)).

Similarly here, the Court finds that the warrant authorizing the search of Defendant's house and business was not a general warrant.  As recounted above, the warrant authorized the seizure of all documents within certain categories of financial records.  Like in Christine, "[b]y directing the searching officers to seize all of these items, the magistrate, rather than the officer, determined what was to be seized."  687 F.2d 753.

9

Moreover, the scope of items listed to be seized was limited by time, and by category.  Finally, the introductory sentence further limits the type of documents to be seized to those in the name of, or on behalf of, Bishop Krabsz, and the entities in which he has a financial interest.

Moreover, the warrant was not "general" even though the search required the officers to examine documents to determine whether they were within the scope of the items to be seized.  As the Supreme Court has explained:

> In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the "seizure" of telephone conversations. In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.

427 U.S. 463, 482 n.11 (1976).

Here, the Court finds no evidence that the officers failed to exercise the appropriate level of care.  To be sure, Defendant points out that in executing the search the officers looked in such places as a dresser drawer and a shed.  However, as the Government argues, and as the affidavit accompanying the warrant sets forth, it is typical for individuals engaged in tax fraud and evasion to hide cash at their homes.  "Although the scope of the warrant was certainly extensive, the warrant was not general. . . .  It was indubitably broad, but it was not 'general.'"

10

United States v. Ninety-Two Thousand Four Hundred Twenty-Two
Dollars and Fifty-Seven Cents, 307 F.3d 137, 149 (3d Cir. 2002).

    B.   Good Faith Exception to Exclusionary Rule Applies

    Furthermore, the Court finds the good faith exception to the
exclusionary rule applicable here.  Pursuant to United States v.
Leon, 468 U.S. 897 (1984), unless novel issues are present,
courts may bypass the issue of probable cause and proceed
directly to examining whether the executing officers operated in
good faith.  Ninety-Two Thousand Four Hundred Twenty-Two Dollars
& Fifty-Seven Cents, 307 F.3d at 145.  This case presents no
novel questions of law and, therefore, the Court will turn
directly to the officers' good faith.

    In United States v. Hodge, 246 F.3d 301 (3d Cir. 2001), the
court stated that the "test for whether the good faith exception
applies is whether a reasonably well trained officer would have
known that the search was illegal despite the magistrate's
authorization."  Id. at 307 (quoting United States v. Loy, 191
F.3d 360, 367 (3d Cir. 1999)).  The court there continued: "The
mere existence of a warrant typically suffices to prove that an
officer conducted a search in good faith and justifies
application of the good faith exception."  Hodge, 246 F.3d at
307-08 (citing Leon, 468 U.S. at 922, and United States v.
Williams, 3 F.3d 69, 74 (3d Cir. 1993)).  Nonetheless, an
officer's reliance on a warrant would be unreasonable:

(1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

(3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or

(4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d at 146 (quoting Williams, 3 F.3d at 74 n.4).

In United States v. Davis, 226 F.3d 346 (5th Cir. 2000), the defendant appealed the denial of a motion to suppress evidence seized following the execution of a search warrant at the defendant's home and office.  The warrant "listed fifteen categories of evidence to be seized, mostly various kinds of financial records, both paper and electronic."  Id. at 349.  The warrant was based upon the affidavit of an FBI agent which stated, among other things, that "bank records revealed hundreds of thousands of dollars had come into the accounts of [the defendant's] firm . . . but that no tax returns had been filed for that company for" the relevant years.  Id. at 350.  The FBI seized 65 boxes of documents in the search, all of which the defendant moved to suppress.  After a hearing, the court denied

12

the suppression motion.

Following a trial, the defendant was convicted of conspiracy, 18 § U.S.C. 371, wire fraud, 18 U.S.C. § 1343, travel and transportation of securities for fraudulent purposes, 18 U.S.C. § 2314, and money laundering, 18 U.S.C. § 1957, all in connection with his operation of "an advance-fee scheme."[4]   In affirming the judgment of conviction, the Court of Appeals rejected the defendant's argument that the trial court erred in failing to suppress the seized evidence.  In rejecting the defendant's Fourth Amendment challenge on appeal, the court held:

> the fifteen categories of evidence described in the warrant are delineated in as much detail as is practicable for investigating the kind of fraud indicated in this case.  We have held that warrants using generic categories of evidence are adequately particular where the crime being investigated is likely to require examination of all of a business's records. The affidavit indicated that there was reason to believe that [the defendant's business ] had failed to file required tax returns; proof that [the defendant's firm] had made money on which it owed taxes would require broad categories of [the firm's] records. Further, the warrant in this case shows that the officers made some attempt to narrow the categories of evidence as much as possible.  For example, the warrant limited the documents to be seized by date or subject matter in many cases. . . .  It was therefore not so defective that an officer would be unreasonable to rely on it.

Id. at 352 (citations omitted).  Applying the Leon exception, the court upheld the lower court's denial of the suppression motion.

_____

[4] Pursuant to this scheme, the defendant would agree to obtain funding for clients, but would never do so.

13

Similarly here, the officers who executed the challenged warrant could have reasonably relied on that warrant in executing the search of Defendant's house.  In the first instance, Defendant does not contend either that the Magistrate Judge issued the warrant in reliance on a deliberately or recklessly false affidavit, or that Judge Rosen abandoned his judicial role and failed to perform his neutral and detached function.  Next, as already noted, Defendant does not challenge the existence of probable cause to support the issuance of the warrant.

Finally, for reasons already explained, the Court holds that the warrant was not so facially deficient that it failed to particularize the place to be searched or the things to be seized.  See Marvin v. United States, 732 F.2d 669 (8th Cir. 1984) (upholding validity of warrant in criminal tax investigation where warrant described with sufficient particularity "items likely to provide information concerning the [defendants'] taxable income for the years involved"); In re Application of Paperboard Sales, Inc., 291 F. Supp. 1018 (S.D.N.Y. 1968) (finding probable cause for issuance of search warrant in income tax evasion investigation where papers which related to defendant's income were not only evidence of a crime but were "intended for use . . . as the means of committing a criminal offense"); cf. United States v. Diaz, 841 F.2d 1 (1st Cir. 1988) (upholding warrant describing items to be seized as

14

all sales records and all accounts payable records, as nature of
insurance fraud scheme such that "the government had to
demonstrate that the <u>total</u> sales plus the <u>total</u> claimed losses of
a certain produce exceeded the <u>total</u> amount purchased of that
item"). But <u>see</u> <u>In re Impounded Case (Law Firm)</u>, 840 F.2d 196,
200 (3d Cir. 1988) (finding it unnecessary to adopt "the broad
proposition tendered by the government" that any document likely
to show actual amounts received can properly be seized whenever
there is probable cause to suspect that the crime of tax evasion
or the crime of underreporting of gross income has been
committed); <u>United States v. Washington</u>, 797 F.2d 1461, 1472-73
(9th Cir. 1986) (holding in tax evasion case that the section of
the challenged warrant permitting officers to seize articles
"tending to establish the wealth and financial status" of the
defendant "impermissibly overbroad"). Like in <u>Ninety-Two</u>
<u>Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents</u>,
307 F.3d at 149, under the facts presented here "reasonable
officers could have easily believed that the warrant was not even
overly broad with respect to the categories of items to be
seized." Though in both cases the warrant authorized the search
for and seizure of "entire categories of legitimate business
records, . . . it is critical to keep in mind that a principal
purpose of the warrant[s] was to prove a negative . . . ." <u>Id.</u>

In <u>Ninety-Two Thousand Four Hundred Twenty-Two Dollars and</u>

Fifty-Seven Cents, for example, a warrant was issued in connection with a wide-scale investigation of illegal trafficking of food stamps by Kim's Wholesale Distributor's Inc. ("Kim's"). The "principal purpose of the warrant was to prove . . . that Kim's had not engaged in legitimate business transactions with the sham groceries from which Kim's had received large cash payments." Id. In other words, it was necessary to examine a wide-range of categories of business records in order to determine whether evidence of legitimate business transactions with the grocery stores in question was lacking.

Similarly here, in order to show that Defendant did not report his total income to the IRS for the relevant time period, the Government needed to examine all documents reflecting Defendant's true income. Stated another way, the Government needed to "recreate" Defendant's actual income and assets in order to prove that he had not filed accurate tax returns. For these reasons, "a reasonable officer could easily have believed that the breadth of the warrant in this case was justified." Id. at 150. Accordingly, the Court finds that the good faith exception to the exclusionary rule applies.

   C.   Warrant Was Not Otherwise Defective

In any event, for the following reasons the Court finds that the warrant withstands the remainder of Defendant's Fourth Amendment challenges. Initially, Defendant argues that the

16

places to be searched were not identified with the requisite particularity.  Defendant additionally contends that probable cause was lacking to find the items identified at the Defendant's house.  The Court will address each in turn.

First, the accompanying attachments identify the locations to be searched by address, and in the case of the house, by aerial photograph.  The Court finds such descriptions sufficient, especially considering that the Government did not possess more detailed information as to the location of the items within the home.  The Court should not expect more from the Government considering the nature of the crimes being investigated.

Other courts too have considered the practical implications of identifying with particularity items that are being hidden. See, e.g., United States v. Mathison, 157 F.3d 541 (8th Cir. 1998) (holding that because "fraud, by its nature, entails concealment," search warrant properly allowed search of all of defendant's financial and corporate records of 17 corporations potentially involved in the criminal activity); United States v. Hensen, 848 F.2d 1374 (6th Cir. 1988) (validating warrant generally describing various records of car dealer where affiant "could not have known at the time he applied for the warrant what precise records and files would contain information concerning the odometer-tampering scheme"); see also United States v. Spilotro, 800 F.3d 959 (9th Cir. 1986) (holding document

17

description unduly broad where affiant could have provided a
narrower description of the items to be seized).  As the Supreme
Court recognized in <u>Andresen</u>, "[t]he complexity of an illegal
scheme may not be used as a shield to avoid detection when the
State has demonstrated probable cause to believe that a crime has
been committed and probable cause to believe that evidence of
this crime is in the suspect's possession."  427 U.S. at 480
n.10.  For these reasons, the Court holds that descriptions in
the warrant of the items to be seized were sufficient.

Moreover, the Court rejects Defendant's argument that
probable cause was lacking to find the items to be seized at
Defendant's house.  A magistrate judge may find probable cause
when, viewing the totality of the circumstances, "there is a fair
probability that . . . evidence of a crime will be found in a
particular place."  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).
"One does not need Supreme Court precedent to support the simple
fact that the records of illegal business activity are usually
kept at either a business location or at the defendant's home.
Likewise, personal financial records are also usually stored at a
person's home or place of business."  <u>United States v. Abboud</u>,
438 F.3d 554, 572 (6th Cir. 2006).

Additionally, the Court finds that the officers had probable
cause to find at least certain of the items described by the
warrant in the shoe box where the gun was ultimately found.

18

Based on the description of the items to be seized, among them checks, withdrawal tickets, deposit slips and money cash bands, as well as the fact that there was probable cause to believe that the items were being concealed, see supra, it was eminently reasonable for the officers to search for those items in a shoe box in a clothes closet.[5]  For these reasons, the Court finds probable cause to find evidence of tax fraud and evasion at Defendant's house, and in particular, in the shoe box from which the gun was seized.

Next, the Court rejects Defendants' attack on the reliability of the Capra affidavit as including the "conclusionary statement that people typically keep evidence of tax related offenses anywhere within their control." (Def. Br. at 22.)  "Defendant's claim that [this was a] conclusory statement[] . . . misses the mark; the affiant is a seasoned FBI Special Agent whose primary concentration is" tax-related crimes. As such, "the magistrate correctly relied on the affiant's experience in his assessment of the probable location of the evidence."  Abboud, 438 F.3d at 572.  It is common sense,

---

[5] And, obviously, as the gun was in plain view, the officers had probable cause to seize it.  See Coolidge v. New Hampshire, 403 U.S. 443 (1971) (explaining applicability of plain view doctrine to circumstances where "police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character"); see also N.J.S.A. 2C:39-2(b) and 2C:39-5(b) (creating presumption of unlawfulness for possession of handguns under New Jersey law).

buttressed by observations of Defendant at his home with his briefcase and receiving bills, that evidence of tax evasion could be expected to be hidden in this residence.

Finally, to the extent that Defendant argues that the warrant was overly broad in the sense that the warrant authorized the seizure of items as to which there was no probable cause, that argument too is without merit.  So long as a warrant is not a general warrant, redaction of the valid severable phrases or clauses may be appropriate.  United States v. Christine, 687 F.2d 749 (3d Cir. 1982).  The Court is mindful that "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for other items as well."  2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(f) (1978)).  Because the Court finds, for reasons already explained, that the warrant contains the requisite particularity of items to be seized and places to be searched, and in any event that application of the good faith exception to the exclusionary rule is appropriate under the circumstances presented here, the Court need not examine whether redaction is necessary.

20

**III. CONCLUSION**

For the reasons explained, the Court finds that the search of Defendant's home did not offend the Fourth Amendment. Accordingly, Defendant's suppression motion will be denied.  An appropriate Order will follow.

**June 2, 2006**                    **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    U.S. District Judge

21